IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

COREY MANDRELL TURNER                                                                PLAINTIFF

v.                                      Civil No. 6:19-CV-06016

JASON WATSON (Clark County Sheriff)                                               DEFENDANTS
and JOHN DOE (Arresting Officer,
Arkadelphia City Police, Clark County)

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 52) and Defendant Watson's Motion for Summary Judgment and Response to Plaintiff's Motion. (ECF No. 55). Also pending are Plaintiff's Motion to Add and Consolidate (ECF No. 46), Motion to Compel (ECF No. 60), and Motion to Strike Affidavits. (ECF No. 66).

### I. BACKGROUND

**A. Procedural Background**

Plaintiff filed his Complaint in the Eastern District of Arkansas on January 24, 2019. (ECF No. 1). It was transferred to this District on February 7, 2019. (ECF No. 4). On February 8, 2019, the Court entered an Order directing Plaintiff to file an Amended Complaint. (ECF No. 7). Plaintiff did so on February 19, 2019. (ECF No. 8).

1

Plaintiff alleges Defendant violated his Fourth and Fourteenth Amendment rights on November 7, 2018,[1] when they arrested him eight days before he was to report for a twenty-year sentence in the Arkansas Department of Correction ("ADC"). (ECF No. 8 at 3, 8-10). Plaintiff alleges that on November 7, 2018, he was on house arrest with an ankle monitor. (*Id*. at 3, 8-9). He called Arkadelphia 911 to report the presence of an unwanted person in his house and that someone had put sugar water in the gas tank of his vehicle. (*Id*. at 8). When the police arrived, they arrested him, telling he was being taken for evaluation and that they were "just following orders." (*Id*. at 9). He was placed in the visitation room for a few hours, at which time Jail Administrator Barnes told him his bond was being revoked. (*Id*.). When Plaintiff protested, stating that it was part of his plea agreement that he be released on an ankle monitor until November 15, 2018, Barnes told him "at least you['re] not getting a new charge." (*Id*. at 10). Plaintiff alleges he was then transported to the ADC somewhere between forty hours and three days after the arrest. (*Id*.).

Plaintiff believes his house arrest was revoked by Defendants in retaliation for filing a § 1983 case with this Court in *Turner v. Watson*, case number 6:18-cv-06068. Plaintiff filed this prior § 1983 case against Sheriff Watson, Jail Administrator Barnes, and other defendants on August 6, 2018. The defendants were ordered served on August 7, 2018, and the Answer was filed on August 30, 2018. A Report and Recommendation was entered by this Court on January 30, 2020, recommending the case be dismissed. (*Turner v. Watson*, 6:18-cv-06068, ECF No. 71.).

Plaintiff's official capacity claims were dismissed on preservice screening. (ECF No's. 9 and 11). Plaintiff voluntarily dismissed Chief of Police Ray Wingfield on July 10, 2019. (ECF No. 39).

---

[1] The summary judgment record indicates that he was actually arrested on November 6, 2018.

Plaintiff filed a Motion for Summary Judgment on December 2, 2019. (ECF No. 52). Defendant Watson filed a Motion for Summary Judgment and Response to Plaintiff's Motion on December 13, 2019. (ECF No. 55). On December 16, 2019, the Court entered an Order directing Plaintiff to file his Response to Defendant Watson's Motion for Summary Judgment, which he did on December 30, 2019. (ECF No's. 59, 61, 63, 64)

### B. Factual Background

Deputy Prosecuting Attorney Dan Turner was the prosecutor in Plaintiff's criminal case. According to his Turner's affidavit, Plaintiff appeared in Clark County Circuit Court on October 9, 2018, where he entered a negotiated guilty plea to a felony drug charge in case number 10CR-18-82. (ECF No. 57-9 at 1; Arkansas Court Connect, last accessed Jan. 28, 2020). He was represented by a public defender, who was present for the plea. (*Id*.). The plea included a proposed sentence recommendation of 240 months with 120 months suspended imposition of sentence (SIS). The recommendation further included imposition of a fine of $455.00. (ECF No. 57-9 at 1). This sentence recommendation was subsequently adopted by the Clark County Circuit Court. (*Id*.). As part of the negotiated agreement, Plaintiff requested a report date for a date certain to begin serving his sentence. Clark County Circuit Judge Greg Vardaman allowed Plaintiff to be held on home confinement with electronic monitoring until November 15, 2018, at 9:00 am, at which time Plaintiff was to turn himself in at the Clark County Detention Center ("CCDC"). (*Id*. at 2). Brady Harmon is the owner and president of Southwest Probation Services, Inc., which provided the electronic monitoring service for Plaintiff. (ECF No. 57-11 at 1). Mr. Harmon stated in his affidavit that Judge Vardaman instructed that, during the period of monitoring, if Plaintiff got into trouble, he would be sent on to the ADC. (*Id*. at 1). There is no dispute concerning these facts.

There is also no dispute that Plaintiff's period of house arrest did not progress smoothly. According to statements made by various persons on the officers' body-cam videos, law

enforcement was called to Plaintiff's house twice between his sentencing on October 9, 2018, and the termination of his house arrest on November 6, 2018. Officers on the scene on November 6th stated there was no doubt they would be called back out to the house again if Plaintiff remained there. (ECF No's. 57-4, 57-5). Plaintiff's mother and wife both agreed that the house arrest was not working out and Plaintiff needed to be removed from the house. (ECF No's. 42, 57-4, 57-5). Prosecutor Dan Turner confirmed that prior to November 6, 2018, he was informed that Plaintiff was experiencing conflict at his home with his wife and he needed to leave the house. Turner "made it clear [to Plaintiff] that a condition of [his] home confinement as imposed by the Court was that he stay at the residence." (ECF No. 57-9 at 2). Turner further advised Plaintiff that he would be in violation of the Circuit Court's orders as to his release if he could not stay at his house. (*Id*).

At 3:44 p.m. on November 6, 2018, Plaintiff placed a 911 call stating that there were people in his house who were refusing to leave. The notation in the station log further indicates that "Brady at SW Probation adv. that Corey had torn up the residence – adv. need two units to go." (ECF No. 57-2 at 1). An audio tape of the call (ECF No. 57-3) was provided to and reviewed by the Court. Plaintiff stated that there were people in his house and in his attic and he did not want them there. He stated his wife was letting them in. He asked that police be sent to the house. He did not know "these dudes" but he did not want to know them. (*Id*.). The Arkadelphia police report characterized Plaintiff's behavior as erratic, and indicated Plaintiff's wife had told officers that Plaintiff was not taking his medication. (ECF No. 57-6 at 3).

The affidavits from Prosecutor Turner, Defendant Watson, and Brady Harmon, as well as the officers on the body-cam video, all state that on November 6, 2018, Judge Vardaman ordered that Plaintiff's house arrest be terminated. (ECF No's. 57-3; 57-4; 57-8 at 2; 57-9 at 3; 57-11 at

4

2;). Turner stated in his affidavit that, because he was in front of Judge Vardaman and Plaintiff's public defender was also present, he informed Judge Vardaman of the situation as it was occurring. (ECF No. 57-9 at 3). Judge Vardaman directed the Plaintiff be "picked up." (*Id*.). Turner relayed this information to the Sheriff's Department and told Sheriff Watson that Judge Vardaman ordered that Plaintiff be picked up. No further hearing was held on the termination of Plaintiff's house arrest. (*Id*.).

In his Statement of Facts for his Summary Judgment Motion, Plaintiff disputes that he was behaving erratically, disputes several other facts, and points to the body camera video and the incident report as evidence. (ECF No. 53). He states he has diagnoses of bipolar, manic depress [sic], PTSD, and paranoid schizophrenia, but was taking his medications when he was arrested. (*Id*. at 3). While Plaintiff denies he was acting erratically and disputes several other facts, the Court finds these not to be facts material to the issues raised in the Motion for Summary Judgment.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

Defendant Watson argues summary judgment in his favor is appropriate because: 1.) he is entitled to quasi-judicial immunity; 2.) the Fourth Amendment does not apply; 3.) there is no right to due process for post-sentencing custody; 4.) there is no Eighth Amendment right to be housed in a particular location; 5.) there is no evidence of retaliation; 6.) Defendant Watson is entitled to judgment as to damages.  (ECF No. 56 at 5-16).

In his Response Plaintiff argues Defendant Watson was not cooperative during the discovery process.  In particular he notes that he was not provided with a copy of the warrant issued by the judicial officer, a copy of the application verifying that Plaintiff had violated his conditions of release or terms of order from the prosecuting attorney, or with any proof that Plaintiff was taken before any judicial officer for due process before revoking his house arrest.  He asks that the Court stay the Motion for Summary Judgment until Defendant provides the necessary information.  (ECF No. 61).

#### A.  Quasi-Judicial Immunity

Defendant Watson is entitled to quasi-judicial immunity.  "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988) (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).  By the same reasoning, arresting an individual pursuant to a

6

valid court order of bond revocation does not give rise to a § 1983 claim. Further, courts have extended a judge's absolute immunity from suit to officers who act at the direction of the court. In *Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974), the Eighth Circuit held that a "quasi-judicial form of immunity is extended to police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court." *See also Penn v. United States*, 335 F.3d 786, 790 (8th Cir. 2003) (sheriff and captain executing a facially valid tribal court order were "entitled to absolute quasi-judicial immunity for all acts prescribed by the order").

Plaintiff disputes that Judge Vardaman gave an order for his house arrest to be terminated based on the lack of a written judicial order. (ECF No. 64 at 4-5). A judge's order need not be in writing to confer quasi-judicial immunity. *See e.g. Martin v. Hendren*, 127 F.3d 720, 721-22 (8th Cir. 1997) (officer was entitled to absolute quasi-judicial immunity for carrying out judge's verbal command to handcuff plaintiff and remove plaintiff from courtroom). There is also extensive corroboration in the summary judgment record as to the existence of Judge Vardaman's order, including repeated reference during the body camera video, such that no reasonable jury could doubt that the order was issued. Notably Plaintiff offers no summary judgment evidence establishing a question of material fact in this regard, rather he contends that Judge Vardaman's verbal order was not reduced to writing. Thus, the summary judgment record indicates Defendant Watson acted on the verbal order of Judge Vardaman when he directed Plaintiff be arrested. Defendant Watson is entitled to quasi-judicial immunity and Summary Judgment is proper based on Defendant's Watson's assertion of quasi-judicial immunity.

### B. Fourth Amendment

Plaintiff argues his Fourth Amendment rights were violated when his house arrest was terminated, and he was taken into custody to begin his ADC sentence several days earlier than he had negotiated in his guilty plea. There is no material factual dispute the Plaintiff was merely

awaiting service of his sentence here.  "[P]ost-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment." *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 681 (8th Cir. 2012) (quoting *Torres v. McLaughlin,* 163 F.3d 169, 174–75 (3d Cir.1998)).  As Plaintiff had already been convicted and was merely waiting on house arrest to be taken to the ADC, his Fourth Amendment rights were not violated by his arrest.

### C. Fourteenth Amendment

Plaintiff argues his Fourteenth Amendment rights were violated because he was removed from his post-conviction house arrest and taken to the ADC several days earlier than ordered at his sentencing.

In order to prevail on a due process claim, Plaintiff must first demonstrate that he was deprived of life, liberty, or property by government action.  *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003).  As noted by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), although convicted prisoners do not shed all constitutional rights at the prison gate, lawful incarceration brings about the necessary limitation of many privileges and rights justified by the consideration underlying our penal system.  Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.  *Id.* at 485.  "To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin*, 515 U.S. at 484).  The Supreme Court has also held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low- to maximum-security prison because

8

"[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").

There is no dispute as to the facts regarding this claim. Plaintiff had been convicted and was being held on house arrest pending his transfer to the ADC. Thus, the Judge ordering his transfer to the ADC several days earlier than originally ordered, without a hearing, did not violate his Fourteenth Amendment due process rights.

### D. Retaliation

Plaintiff argues that when Defendant Watson terminated his house arrest several days earlier than negotiated, he did so in retaliation for a lawsuit he filed against Sheriff Watson and other staff of CCDC in 2018. As noted above, Judge Vardaman ordered the house arrest terminated, not Defendant Watson. Even absent Judge Vardaman's order this claim would still fail.

"To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Here, Plaintiff's filing suit pursuant to § 1983 is protected activity, however, there is no summary judgment evidence Defendant Watson acted as a result of the other lawsuit filed by Plaintiff. As shown above, the summary judgment record indicates unequivocally that Defendant Watson did not terminate or end Plaintiff's house arrest. Rather, Defendant Watson acted at the direction of Judge Vardaman. His motivation in ordering Plaintiff to be arrested, thereby

9

terminating his house arrest, was the desire to follow a judge's valid order. There is no evidence of retaliation.

### IV.  CONCLUSION

Accordingly, I recommend that Plaintiff's Motion for Summary Judgment (ECF No. 52) be DENIED, Defendant Watson's Motion for Summary Judgment be GRANTED (ECF No. 55), and Plaintiff's Complaint be DISMISSED WITH PREJUDICE. I further recommend that Plaintiff's Motion to Add and Consolidate (ECF No. 46), Motion to Compel (ECF No. 60), and Motion to Strike Affidavits (ECF No. 66) all be DENIED.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of February 2020.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE